Filed 4/16/26  P. v. Thomas CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JASON THOMAS,<br><br>        Defendant and Appellant. | A169330<br><br>(Contra Costa County Super. Ct. No. 02-22-00307) |
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br>JAMAR JAMERSON,<br>        Defendant and Appellant. | A169578<br><br>(Contra Costa County Super. Ct. No. 02-22-00306) |

After a joint trial, a jury convicted Jason Thomas and Jamar Jamerson of multiple felonies — including kidnapping to commit robbery — and found true related firearm enhancements.  (Pen. Code, §§ 209, subd. (b)(1), 12022.53, subd. (b), 12022.5, undesignated statutory references are to this code.)  We consolidated the appeals.  We affirm the judgment as to Jamerson.  As for Thomas, we affirm as to counts 1 and 4 but — pursuant to the agreement of the parties — remand counts 2 and 3 to the trial court for resentencing.

# BACKGROUND

In January 2023, the prosecution charged Thomas and Jamerson with kidnapping to commit robbery (count 1), first degree robbery in concert (count 2), and first degree burglary with a person present (count 3). (§§ 209, subd. (b)(1), 211, 213, subd. (a)(1)(A), 459, 462, subd. (a), 667.5, subd. (c).) It also alleged that they personally used firearms and that the offenses were serious and violent. (§§ 12022.53, subd. (b), 12022.5, subd. (a), 1192.7, subd. (c)(8), 667.5, subd. (c)(8).) Additionally, it charged Thomas with possession of a firearm by a felon (count 4) and alleged that he had two prior serious and violent felony convictions and was thus eligible for third strike sentencing. (§§ 29800, subd. (a)(1), 667, subds. (a)(1), (d) & (e), 1170.12, subds. (b) & (c).) Finally, it alleged various aggravating factors as to Thomas and the offenses.

In May 2022, S.H. parked his car in the parking lot of his apartment complex. He parked in front of a locked security gate that blocked a breezeway of the complex. The gate locks automatically when closed.

Within a minute, a car double parked across the street. Jamerson and J.K. got out of the backseat dressed in black and walked towards the apartment building. Thomas got out of the driver's seat and followed. Jamerson and J.K. approached S.H.'s car, but they quickly retreated and hid behind another car with Thomas. Thomas watched S.H.'s car and the security gate. They waited about 20 seconds before Jamerson and J.K. ran towards S.H.'s car with their guns pointing towards it. Thomas followed.

Police officers arrived within 10 minutes. In the parking lot, they saw S.H.'s car with the passenger door open and cupcakes on the seat. When they approached the locked gate, J.K. and Jamerson — one of whom was armed with a gun — walked out of an apartment just inside the gate. Officers drew

2

their guns, J.K. and Jamerson ran, and the officers gave chase. After approximately one minute, officers cornered J.K. and Jamerson in the building's yard and arrested them. They were uninjured.

After arresting Jamerson and J.K., officers returned to the apartment. An officer heard hard objects being moved against the walls. As officers broke open the door, Thomas fled out of a window. Officers immediately arrested him. He was uninjured but covered in blood.

Officers entered the one-room apartment. Thomas had locked and barricaded the door with a refrigerator, and the apartment had been ransacked. S.H. lay in the middle of the room, bleeding from his head and from a stab wound in his back. His hands were bound, he was gagged, his shorts pulled down, and his shirt pulled over his head. Once officers removed the gag, S.H. said they "hit me in the head" and "have my wallet and all that stuff." "Things were broken," and "[p]ersonal property was strewn all about the residence." Several shoe boxes were dumped out in front of the closet.

Officers found three firearms. They found a Glock pistol "to the left" of the apartment's door in a brown paper bag underneath a stairway in the breezeway. It had blood on its slide, frame, and magazine well. They found two other handguns and two backpacks in the yard where Jamerson and J.K. had fled. In one backpack, they found more than a pound of marijuana in different packaging — likely for distribution — and they found S.H.'s wallet on J.K.

In February 2023 — after the trial court denied Thomas's motion for judgment of acquittal — a jury convicted Thomas and Jamerson of all counts and found the firearm enhancements true. As for Thomas, the court found the prior convictions and strike allegations true. In November, the court sentenced Thomas to 27 years to life in prison, "plus 20 years" for

3

kidnapping. It also sentenced him to 25 years to life in prison for being a felon in possession of a firearm, to be served concurrently with the kidnapping sentence. It sentenced Jamerson to six years in prison for robbery and stayed punishment on all other counts after finding multiple mitigating factors.

## DISCUSSION

Thomas, Jamerson, and the Attorney General challenge the results of the trial. Thomas and Jamerson challenge two of their convictions. Thomas also contends the trial court erred by denying his motion for judgment of acquittal. Finally, Thomas and the Attorney General contend the court erred while sentencing Thomas. We address each claim in turn.

### I.

Thomas and Jamerson contend insufficient evidence supports their convictions for kidnapping to commit robbery. Specifically, they contend there is insufficient evidence of asportation. We disagree.

Asportation for kidnapping to commit robbery requires movement of the victim that "was not merely incidental to the commission of the robbery" and "increased the risk of harm over and above that necessarily present in the crime of robbery itself." (*People v. Vines* (2011) 51 Cal.4th 830, 869 & fn. 20 (*Vines*).) "These two elements are not mutually exclusive but are interrelated." (*Id.* at p. 870.) "With regard to the first prong, the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved." (*Ibid.*) "There is, however, no minimum distance a defendant must move a victim to satisfy the first prong." (*Ibid.*) The second prong " ' "refers to whether the movement subjects the victim to" ' " an " ' "increase in risk of harm above and beyond that inherent in [the underlying crime]." ' " (*Id.* at pp. 870 & 869, fn. 20.) " ' "This includes

consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." ' " (*Ibid.*)

" 'On appeal, an appellate court deciding whether sufficient evidence supports a verdict must determine whether the record contains substantial evidence' " — " 'evidence that is reasonable, credible, and of solid value—from which a reasonable jury could find the accused guilty beyond a reasonable doubt.' " (*Vines, supra,* 51 Cal.4th at p. 869.) "We presume in support of the judgment 'the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*) " ' "The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence." ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118, 1117 (*Ramirez*).) If " ' " 'the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*Id.* at p. 1118.)

Substantial evidence supports the jury's finding that Thomas and Jamerson forced S.H. from his car into his apartment. (*Vines, supra,* 51 Cal.4th at p. 869; *Ramirez, supra,* 13 Cal.5th at p. 1118.) To begin, they could not access S.H.'s apartment without him because of an automatically locking security gate. Moreover, they approached S.H.'s car shortly after he parked it. They hid behind another car, waited, and watched. Then they suddenly rushed S.H.'s car, and Jamerson had his gun drawn. When officers arrived 10 minutes later, its passenger door was open with cupcakes on the seat. They found S.H. without pants, bound, gagged, and bleeding from the head and back in his ransacked apartment. From this evidence, the jury could reasonably deduce that Thomas and Jamerson ambushed S.H. at his

5

car while he unloaded groceries and forced him into his apartment.  (*Vines*, at p. 869.)

This movement was sufficient to convict Thomas and Jamerson of kidnapping.  (*People v. Simmons* (2015) 233 Cal.App.4th 1458, 1470, 1472; *People v. Ellis* (1971) 15 Cal.App.3d 66, 73.)  Contrary to their arguments, the movement decreased the likelihood they would be detected and increased S.H.'s risk of harm.  (*Simmons*, at pp. 1470, 1472 [moving victims from outside to inside increased risk to victims because it hid them from public view].)  And it was essential to rob S.H. of the contents within his apartment.  (*Ellis*, at p. 73 [movement into apartment not incidental when necessary to accomplish criminal purpose].)

Thomas and Jamerson's other arguments to the contrary fail.  They emphasize an absence of evidence, but we review sufficiency challenges for evidence that does exist and the inferences that can be drawn from it.  (*Vines*, *supra*, 51 Cal.4th at p. 869.)  They also argue that, even if they moved S.H. from his car to his apartment, that distance was not more than 10 feet.  But there is "no minimum distance a defendant must move a victim to satisfy the first prong."  (*Id.* at p. 870.)  And although they cite a litany of cases, none concern moving a victim from an outdoor public place into an apartment or they otherwise apply an outdated standard.  (*Id.* at p. 869, fn. 20 [in 1997, Legislature "modified the asportation standard by eliminating the requirement that the movement of the victim 'substantially' increase the risk of harm"]; see, e.g., *People v. Killean* (1971) 4 Cal.3d 423, 424 [movement across threshold of apartment and through apartment's rooms insufficient]; *People v. Mutch* (1971) 4 Cal.3d 389, 397–398 [movement within business insufficient for kidnapping]; *People v. Williams* (2017) 7 Cal.App.5th 644, 669

[victims moved around store]; *People v. Hall* (2024) 104 Cal.App.5th 1077, 1090 [defendants moved victim within home].)

Next, Thomas and Jamerson contend that their convictions for first degree robbery must be reduced to second degree robbery because of insufficient evidence. Specifically, they argue that first degree robbery requires the taking be committed in an inhabited dwelling and argue no evidence proves they took S.H.'s property from him *inside* his apartment. The claim fails.

Robbery is " 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' " (*Ramirez, supra*, 13 Cal.5th at p. 1122, fn. 38.) "Section 212.5 specifies the kinds of robbery that are of the first degree." (*Ibid.*) Among them is "every robbery which is perpetrated in an inhabited dwelling house." (§ 212.5, subd. (a).)

The " ' "crime of robbery is not confined to the act of taking property from victims." ' " (*People v. Debose* (2014) 59 Cal.4th 177, 205.) " ' "The nature of the crime is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot in the first place." ' " (*Ibid.*) "As a result, the commission of a robbery is ongoing ' "until the robber has won his way to a place of temporary safety." ' " (*Ibid.*) As "long as a robber holds the victim captive, the robber's safety is 'continuously in jeopardy' during the period of captivity if at 'any unguarded moment, the victim might . . . escape or signal for help.' " (*Ibid.*) A jury can " 'properly consider that [a] defendant might not have reached a place of temporary safety or attained unchallenged possession of the stolen property when he was still encumbered with [the victim].' " (*Ibid.*)

7

Substantial evidence supports the jury's finding that Thomas and Jamerson never reached a place of temporary safety, and the robbery thus continued while they were in S.H.'s apartment. (*People v. Debose, supra,* 59 Cal.4th at p. 205; *Ramirez, supra,* 13 Cal.5th at pp. 1117–1118.) They ambushed S.H. at his car, forced him into his apartment, and remained there with him for 10 minutes until police arrived. They ransacked the apartment while they were still encumbered with him. Thus, the robbery started with the ambush and continued into the apartment.[1] (*Debose,* at p. 205.)

## II.

Next, Thomas argues the trial court erred by denying his motion for judgment of acquittal with respect to the firearm enhancements. Not so.

After the prosecution concluded its case in chief, Thomas moved for judgment of acquittal as to the firearm enhancements. (§ 1118.1.) He argued the prosecutor presented no evidence that he "was seen with a gun" or "found in possession of a gun." He also argued that "he was in a different place when guns were discarded." The prosecutor countered that, although two guns were found in the building's yard, officers found the Glock just outside the apartment. Given that officers left the apartment unguarded to chase Jamerson and J.K., Thomas had plenty of time to "ditch" the Glock and barricade the door. Moreover, the Glock was covered in blood, the only person bleeding was S.H., and Thomas was likewise covered in blood. Thus, the prosecutor argued, the jury could conclude the firearm was Thomas's, and he used it as a weapon during the robbery. The trial court found sufficient evidence to find that Thomas used a firearm and thus denied the motion.

---

[1] Thomas and Jamerson's claim that the trial court erred while instructing on robbery is forfeited. (*People v. Lee* (2011) 51 Cal.4th 620, 638 [failure to request clarification of an otherwise correct instruction forfeits the claim of error].)

8

Like the trial court, when a defendant moves for judgment of acquittal, we review the sufficiency of the evidence to support a conviction. (*Ramirez, supra*, 13 Cal.5th at p. 1117.) When the motion "was made 'at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point' in the trial." (*People v. Watkins* (2012) 55 Cal.4th 999, 1019.)

Measured at that time, substantial evidence supported a finding that Thomas used the Glock. Three people participated in the robbery, and officers found three guns. They found the Glock outside the apartment door in a brown paper bag. While officers pursued his accomplices and left the door unguarded, Thomas had about a minute to discard the Glock there. Indeed, he barricaded the door with a refrigerator in the same time span. Moreover, the Glock was covered in blood — including the magazine well — and S.H. was the only person bleeding. He bled from the head and a stab wound in his back and said they "hit me in the head." Meanwhile, Thomas was covered in blood when officers arrested him. From this evidence, a jury could rationally conclude that Thomas struck S.H. on the head with the Glock while committing his crimes. (*People v. Watkins, supra*, 55 Cal.4th at p. 1019; *Ramirez, supra*, 13 Cal.5th at pp. 1117–1118.) Thus, the trial court properly denied the motion. (*Ramirez*, at p. 1117.)

In arguing the contrary, Thomas primarily relies on evidence he presented after his motion was denied, during *his* case-in-chief. But we consider the evidence as it stood when he made his motion. (*People v. Watkins, supra*, 55 Cal.4th at p. 1019.) He also argues the jury did not draw the "most reasonable inferences," but we must affirm the judgment if " ' " 'the circumstances reasonably justify the jury's findings' " ' " and may not reverse

" ' " 'simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' "[2] (*Ramirez, supra*, 13 Cal.5th at p. 1118.)

### III.

Next, Thomas and the Attorney General argue the trial court erred during sentencing. We address the claim where they disagree but remand with regard to their points of agreement.

At the hearing, the trial court found Thomas's "serious" criminal history "outweigh[ed] the factors in mitigation," and that striking his prior strikes would be contrary to the interests of justice. It then imposed sentence. As to the kidnapping conviction, it imposed "7 years, plus 10 years for the gun, and 10 years for the [prior strikes]. The total sentence as to Count 1 is a term of 27 to life, plus 20 years." For the robbery and burglary convictions, it sentenced him to "25 to life . . . imposed and stayed." For the felon in possession of a firearm conviction, the court imposed "25 [years] to life" to be served concurrently with his kidnapping sentence. The abstract of judgment, however, states that the court sentenced Thomas to 27 years to life for the kidnapping conviction, plus 10 years for the firearm enhancements attached to his kidnapping *and* robbery convictions. Thomas contends the trial court erred by imposing the firearm enhancement attached to his robbery conviction. He is mistaken.

"The trial court is generally required to include all aspects of a judgment in its oral pronouncement of judgment." (*People v. Leon* (2020) 8 Cal.5th 831, 855.) "Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error." (*Ibid.*) "The abstract of judgment

---

[2] Thus, Thomas's claims regarding his sentence for being a felon in possession of a firearm also fail.

'does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize.' " (*Ibid*.)

Here, according to its oral judgment, the trial court did not impose the firearm enhancement attached to the robbery conviction. Instead, it imposed 20 years for the enhancements attached to the kidnapping conviction — in addition to the indeterminate term of 27 years to life — as required by section 667. (*People v. Flores* (2021) 63 Cal.App.5th 368, 379–381 [court must impose additional consecutive determined term for gun and status enhancements].) No error appears.

Next, the Attorney General contends the trial court erred because it "failed to pronounce sentence on the enhancements attached to the robbery and burglary convictions" and did not "state whether it is selecting the lower, middle, or upper term" for those convictions. Thomas "agree[s] that resentencing is necessary." We likewise agree and remand for the trial court to resentence as to those counts. Unsurprisingly, the parties disagree about what sentence would be appropriate. But we leave it to the court to consider the parties' arguments and exercise its discretion.

## DISPOSITION

As to Thomas, the judgments on counts 1 and 4 are affirmed. We remand counts 2 and 3 to the trial court for resentencing and issuance of a new abstract of judgment.

As to Jamerson, the judgment is affirmed in all respects.

11

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.

A169330 & A169578; *People v. Thomas & Jamerson*